IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROSEN FAMILY CHIROPRACTIC, S.C. d/b/a WEST LOOP CHIROPRACTIC, | ) ) ) ) | No. 11 C 6753 |
| Plaintiff, | ) ) | Judge John J. Tharp |
| v. | ) ) ) | |
| CHI-TOWN PIZZA ON DIVISION STREET, INC., d/b/a CHI TOWN PIZZA EXPRESS, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rosen Family Chiropractic, S.C. ("Rosen") filed an action alleging that Defendant Chi-Town Pizza on Division Street, Inc. ("Chi-Town Division"), doing business as "Chi Town Pizza Express," sent Rosen unsolicited fax advertisements in violation of the Telephone Consumer Protection Act ("TCPA") and the Illinois Consumer Fraud Act ("ICFA"). Rosen also contends that Chi-Town Division's actions constituted conversion. Chi-Town Division moves for summary judgment, arguing, essentially, that Rosen has sued the wrong corporation. According to Chi-Town Division, the unsolicited fax advertisement in question was sent on behalf of a separate (and now-bankrupt) entity, Chi-Town Express, Inc. ("Chi-Town Express"), which is not a party to this lawsuit. But because disputed questions of material fact remain as to whether the unsolicited fax advertisement promotes Chi-Town Division's services, or whether the advertisement was sent on behalf of Chi-Town Division, the motion for summary judgment is denied.

1

# FACTS[1]

Milenko Peles was and is the sole owner of two pizza restaurants, Chi-Town Division and Chi-Town Express, respectively. Pl.'s Add. Facts ("PAF") (Dkt. 55) ¶¶ 1-2. For a period, he simultaneously operated both Chi-Town Division, which was located at 11 W. Division St., and Chi-Town Express, located at 151 N. Michigan Ave. *Id.* ¶¶ 4, 6. Chi-Town Express's corporate form was involuntarily dissolved on December 11, 2009, but Peles continued to operate the pizza restaurant at 151 N. Michigan until March 2011. *Id.* ¶¶ 7-8. While he was operating both restaurants, Peles hired a marketing company to send fax advertisements to local businesses. *Id.* ¶ 9. Rosen argues that Peles hired the marketing company on behalf of both of his restaurants, but Peles testified that he hired the marketing company on behalf of Chi-Town Express only. *Id.* At some time between September 2007 and September 2011,[2] Rosen received a fax advertisement for Chi-Town Express. *Id.* ¶ 14. Rosen had not previously placed any orders with Chi-Town Division or Chi-Town Express, never provided its fax number to those entities, and never had any business relationship with those entities. *Id.* ¶ 15.

The faxed advertisement consists of a one-page flyer providing contact information (including a website address) for Chi-Town Express as well as a listing of its lunch specials. *Id.* ¶ 14. The ad further states that "[w]e also do office catering," and provides a website address for Chi-Town Catering. Chi-Town Catering is not a company independent of Chi-Town Division and Chi-Town Express; rather, it is a marketing

---

[1] Because Chi-Town Division moved for summary judgment, the Court construes all facts and reasonable inferences in the light most favorable to Rosen. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

[2] Rosen explains that it does not know the exact date of the fax transmission because the sender failed to include the fax header information, including the date, as required by the TCPA.

gimmick created by Peles to make his businesses appear larger and more successful. Orders placed through Chi-Town Catering, so long as they are small enough to be manageable, would be filled by Chi-Town Division. Peles Dep. (Dkt. 54-1) at 122:23 – 124:21. Rosen has presented evidence indicating that the web addresses listed for Chi-Town Express and Chi-Town Catering automatically redirected visitors to a single website, found at www.chitownpizza.com, which was shared by Chi-Town Division and Chi-Town Express.[3] PAF ¶ 17. That shared website contained information for both Chi-Town Division and Chi-Town Express, and an "order online" link for both companies, though it is unclear whether the "order online" link was ever operational. *Id.* ¶ 20.

The parties dispute whether the advertisement was sent on behalf of both Chi-Town Division and Chi-Town Express or on behalf of Chi-Town Express only. *Id.* ¶ 9. The companies' records are apparently of no use in determining which company was responsible for the advertisement; no reference to any payment for faxed advertisements has been found in either company's records, and Peles cannot recall how he paid the marketing company. *Id.* ¶¶ 10-13. Peles admits that the assets and liabilities of Chi-Town Division and Chi-Town Express were not kept strictly separate. For example, he admits that the companies shared the same website, and he does not know how the cost of the website was allocated between the companies. *Id.* ¶ 23. Further, Peles often used his own cash and personal credit card to pay for the business expenses of both companies (*id.* ¶ 24), Chi-Town Division acted as a guarantor on a business loan made by a bank to Chi-

---

[3] Chi-Town Division denies Rosen's assertion that the web addresses on the advertisement redirected visitors to the shared Chi-Town Pizza website, but Peles admitted as much in his deposition. Peles Dep. (Dkt. 54-1) at 116:17 – 117:7. In any event, in construing disputed facts in the light most favorable to Rosen, the non-moving party, the Court must assume that the web addresses on the advertisement did redirect to a shared website.

Town Express (*id.* ¶28), and Peles routinely co-mingled Chi-Town Division and Chi-Town Express's assets with one another and with his own personal assets. *Id.* ¶¶ 32-36.

## DISCUSSION

**I. The Parties Dispute Whether Chi-Town Division was the "Sender" of the Advertisement Under the TCPA.**

The TCPA regulatory provisions prohibit sending "junk fax" advertisements, unless the sender has a pre-existing business relationship with the recipient and the recipient has voluntarily made its fax number available. 47 C.F.R. 64.1200(a)(3). The regulation states that:

> No person or entity may: . . . (3) Use a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine . . . .

*Id.* The regulation defines the term "sender" as:

> [T]he person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement.

47 C.F.R. 64.1200(f)(8). Based on that definition, Chi-Town Division violated the TCPA only if the advertisement promoted its goods or services, or if the advertisement was sent on its behalf.

**A. Whether the Advertisement "Advertised or Promoted" Chi-Town Division's Goods or Services is a Disputed Question of Material Fact.**

Rosen alleges that the advertisement at issue "advertised or promoted" Chi-Town Division's services by promoting its catering capacity and by inviting Rosen to visit Chi-Town Division's website. The latter claim is dubious; on its face, the advertisement appears to promote only Chi-Town Express's website. True, the advertisement took potential customers to a shared website from which they may have been able to order from Chi-Town Division, but that is not enough to conclude that the *advertisement itself*

4

promoted Chi-Town Division. If it were, then companies who have nothing to do with a particular advertisement could potentially face liability for it. Take, for example, a hypothetical advertisement for Domino's Pizza that promotes its dominos.com web address. The front page of that website currently promotes several other companies, including Coca-Cola, Ice Breakers, Apple, Amazon, and Google. Clearly none of those companies could face TCPA liability merely on the basis of an advertisement that included Domino's web address. Similarly, Chi-Town Division cannot face TCPA liability here solely because the chitownpizzaexpressonline.com website promoted Chi-Town Division in addition to Chi-Town Express.

However, Rosen's other claim, that the advertisement promotes Chi-Town Division's catering service, creates a material question of fact. The advertisement says "We also do office catering," and it points customers interested in catering to www.chitowncateringonline.com. Rosen alleges that orders placed with Chi-Town Catering would have been filled by Chi-Town Division (PAF ¶ 16), and Peles' deposition testimony appears to substantiate that allegation. Peles Dep. (Dkt. 54-1) at 124:6 – 124:21. If true, then the advertisement does explicitly promote a service provided by Chi-Town Division, and therefore Chi-Town Division would be liable under the terms of the TCPA. Chi-Town Division argues that the advertisement indicates that Chi-Town Express is the company operating the catering business, but that is irrelevant. The TCPA assigns liability to the entity "whose . . . services are advertised or promoted" in the advertisement. 47 C.F.R. 64.1200(f)(8). Chi-Town Division's liability, in other words, turns (in part) on whether it *actually provided* catering services through Chi-Town Catering, a fact question that the parties dispute.

Construing the facts and reasonable inferences in the light most favorable to Rosen, *Abdullahi*, 423 F.3d at 773, a disputed issue of material fact exists, and Chi-Town Division is not entitled to judgment as a matter of law. *Embry v. Calumet City*, 701 F.3d 231, 234 (7th Cir. 2012).

### B. Whether the Advertisement was sent "On Behalf of" Chi-Town Division is Also a Disputed Question of Material Fact.

Rosen also alleges that the advertisement was sent "on behalf of" Chi-Town Division.[4] Cmplt. ¶ 21(a); PAF ¶ 9. Chi-Town Division denies that allegation, claiming that the advertisement was sent on behalf of Chi-Town Express only. PAF ¶ 9. On its face, the advertisement names only Chi-Town Express, and it provides the address and phone number of the Chi-Town Express restaurant. Clearly, the advertisement was sent on behalf of Chi-Town Express,[5] but that does not rule out the possibility that it was also sent on behalf of Chi-Town Division. *See In re Matter of Rules and Regulations Implementing the TCPA*, 10 FCCR 12391, 12397 (FCC 1995) ("We clarify that the *entity or entities* on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements.") (emphasis added).

Rosen cites to circumstantial evidence in favor of an inference that the advertisement was also sent on behalf of Chi-Town Division. Rosen notes that Peles, who personally hired the fax marketing company that sent the advertisement, was the

---

[4] That the advertisement was sent by a separate fax marketing company hired by Peles does not potentially relieve Chi-Town Division of liability. "[D]efendants cannot escape liability simply by hiring an independent contractor to transmit unsolicited facsimiles on their behalf." *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09-5601, 2011 WL 4585028, *4 (N.D. Ill. Sep. 30, 2011).

[5] Unless, as will be explained further below, the advertisement was sent after Chi-Town Express was involuntarily dissolved, but before Peles stopped operating the restaurant that had been incorporated as Chi-Town Express.

president and sole shareholder of both Chi-Town Division and Chi-Town Express. There are no facts in evidence by which the Court can determine whether the advertisement was sent on behalf of both companies, or only on behalf of Chi-Town Express. Peles cannot recall how he paid for the advertisement, and there is no documentary evidence that either Chi-Town Express, or conversely Chi-Town Division, paid for the advertisement. Further, it is possible that Peles ordered the advertisement sometime after Chi-Town Express was involuntarily dissolved, but while he was still operating the restaurant at that address. If so, then Peles could not have been acting on behalf of Chi-Town Express, because Chi-Town Express no longer existed as a corporate entity. Finally, evidence that Chi-Town Division and Chi-Town Express shared the website listed on the advertisement and that the advertisement mentions catering services allegedly provided by Chi-Town Division raises the possibility that Peles intended for the advertisement to promote both of his restaurants.

This is enough to establish a factual dispute. Chi-Town Express fails to establish that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. Instead, it points to the face of the advertisement (which, admittedly, does not directly relate to Chi-Town Division) and argues that Rosen has not carried its burden. But that is insufficient; the evidence presented leaves open the possibility "that a reasonable jury could return a verdict for the nonmoving party," and therefore summary judgment is inappropriate on the TCPA claim.[6] *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001).

---

[6] Chi-Town Division's motion for summary judgment also fails with respect to the ICFA and conversion claims. Chi-Town Division argues that these claims "are predicated upon [its] alleged violation of the TCPA," Opening Br. (Dkt. 27), and that it did not send the

7

**II. The Court Will Not Pierce the Corporate Veil.**

As an alternative to finding Chi-Town Division directly liable, Rosen argues that the Court should disregard the separate corporate existence of Chi-Town Express (while it existed) and pierce its corporate veil to hold Chi-Town Division equitably accountable for Chi-Town Express's actions.[7] Illinois law permits veil piercing when two conditions are met: "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist; and (2) circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751-52 (7th Cir. 2012) (internal quotations omitted); *see also Van Dorn Co. v. Future Chem. and Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985).

Rosen's veil piercing argument fails to satisfy the second prong of the veil piercing test. If we assume that the advertisement did not promote Chi-Town Division's services and that it was not sent on behalf of Chi-Town Division, then Rosen has failed to

---

advertisement. But as explained above, there is a fact dispute as to which corporation sent the advertisement. Chi-Town Division does not argue that an unsolicited fax advertisement is insufficient to state ICFA and conversion claims, so the Court will not weigh in on the split of authorities within this district as to whether these claims are appropriate. *Compare Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's, Inc.*, No. 11-6959, 2012 WL 638765 (N.D. Ill. Feb. 23, 2012) (holding that allegation of junk fax advertisement is insufficient to state a claim for conversion or breach of the ICFA); *with Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768 (N.D. Ill. 2008) (holding that allegation of junk fax advertisement states claims for conversion and breach of the ICFA).

[7] Chi-Town Division correctly notes that Rosen did not plead facts that would give rise to a veil piercing claim or equitable remedy in its complaint. A plaintiff normally may not amend its complaint in response to a motion for summary judgment. *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004). But because the Court has determined that the veil piercing argument fails on its merits, it will address and dispose of the argument.

provide any basis for the court to find that allowing Chi-Town Division to escape liability would "sanction a fraud or promote injustice." *Wachovia*, 674 F.3d at 752. Rosen argues that Peles may have sent the offending advertisement sometime after Chi-Town Express's involuntary dissolution, in which case, presumably, Chi-Town Express could never have been held liable for sending the advertisement. But—again assuming that the advertisement was not sent on behalf of Chi-Town Division and therefore that Peles was not acting as the president of Chi-Town Division when he ordered the advertisement—that is an argument for holding Peles personally liable, not for holding Chi-Town Division liable. Peles was the one who hired the fax marketing company and approved the advertisement.

If, on the other hand, the unsolicited advertisement did promote Chi-Town Division's services, or if it was sent by Peles on behalf of Chi-Town Division, then Chi-Town Division will face direct TCPA liability for the advertisement, and no veil piercing is necessary. Chi-Town Division will not "escape responsibility" if Rosen is able to show that it does in fact bear some responsibility for the advertisement.

Therefore, because the Court cannot conceive of any way in which declining to pierce the corporate veil will sanction a fraud or promote injustice, and because Rosen's claims survive summary judgment even without the veil piercing theory, Rosen's corporate veil argument is rejected.

* * *

For all of these reasons, the Court denies Chi-Town Division's motion for summary judgment.

Date: January 16, 2013

_John J. Tharp Jr._
John J. Tharp, Jr.
United States District Judge