# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROSEN FAMILY CHIROPRACTIC, S.C. d/b/a WEST LOOP CHIROPRACTIC,<br><br>  Plaintiff,<br><br>  v.<br><br>CHI-TOWN PIZZA ON DIVISION STREET, INC., d/b/a CHI TOWN PIZZA EXPRESS,<br><br>  Defendant. | No. 11 C 6753<br><br>Judge John J. Tharp |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosen Family Chiropractic, S.C. ("Rosen") filed this three-count action against Defendant Chi-Town Pizza on Division Street, Inc. ("Division"), doing business as "Chi Town Pizza Express" ("Express"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (Count I), and the Illinois Consumer Fraud Act, 815 ILCS 505/2 (Count II), and common law conversion (Count III). Jurisdiction is based on 28 U.S.C. §§ 1331 and 1367.

The claims concern "an unsolicited fax advertisement" that Rosen alleges Division sent to him in violation of the TCPA. Compl., Dkt. 1, ¶ 7. Rosen now moves pursuant to Fed. R. Civ. P. 23 to certify a class of plaintiffs against Division with respect to Rosen's TCPA claim, and to amend its current Complaint to reflect the class definitions asserted in its motion. *See* Mem., Dkt. 100, at 1 and n.1. For the following reasons, the motion is denied in both respects.

## BACKGROUND

A recurring issue presented in this case is Division's insistence that it "is a separate legal entity from" Express, and that the fax at issue in Rosen's individual TCPA claim refers to

Express, not Division. *See*, *e.g.*, Resp., Dkt. 113, at 1-2. In other words, Division contends that Rosen "sued the wrong corporate entity." Summary Judgment Mem., Dkt. 27, at 3. Shortly after the case was filed, Division moved for summary judgment on this ground, Dkt. 24, but on January 16, 2013, this Court denied that motion due to disputed issues of material fact regarding (1) which of the two entities' goods or services were promoted in the fax at issue in Rosen's individual claim, and (2) on behalf of which entity that fax was sent. *See* Mem. Op., Dkt. 66.

In so holding, the Court observed that the fax at issue in Rosen's individual claim refers to "office catering" and "points customers interested in catering" to a website for placing catering orders (chitowncateringonline.com) which Rosen alleged "would have been filled by" Division. *Id.* at 5. Because the TCPA assigns liability to the entity whose services "are advertised or promoted," 47 C.F.R. 64.1200(f)(8), the Court concluded that Division's liability in this case "turns (in part) on whether it *actually provided*" such catering services, "a fact question that the parties dispute." Mem. Op., Dkt. 66, at 5. In addition, the Court concluded that "evidence that [Division and Express] shared the website listed on the advertisement and that the advertisement mentions catering services allegedly provided by [Division] raises the possibility that Peles [their owner] intended for the advertisement to promote both of his restaurants." *Id.* at 7. This possibility, the Court noted, was also consistent with the lack of documentation regarding who paid for the advertisement and whether it was financed after Express was involuntarily dissolved: "If so, then Peles could not have been acting on behalf of [Express], because [Express] no longer existed as a corporate entity." *Id.*

What ***did not*** support the Court's denial of summary judgment—and what the Court expressly rejected as ***insufficient*** to support Division's TCPA liability—was the fax's mere reference to a website (chitownpizzaexpressonline.com) that "took potential customers to a

shared website from which they may have been able to order from" Division. *Id.* at 4-5. As the Court explained, Division "cannot face TCPA liability here solely because the chitownpizzaexpressonline.com website promoted [Division] in addition to [Express]"—"that is not enough to conclude that the ***advertisement itself*** promoted" Division. *Id.*

Since this ruling, the parties have conducted discovery regarding other advertisements potentially faxed by or on behalf of Division and/or Express, and Rosen now moves to certify a plaintiff class for his TCPA claim against Division based on what he found. Rosen asserts that in October 2009, Peles hired RFG Marketing ("RFG"), which in November and December of 2009 "successfully sent approximately 3,000 facsimile advertisements to at least 106 unique fax numbers on behalf of" Division. Mem., Dkt. 100, at 6. According to Rosen, these transmissions are "evidenced by a fax log produced by RFG," each of the facsimiles "referenced in the fax log used the same template," and each of the facsimiles produced from this template "promoted Defendant's catering services." *Id.* at 6-7, 10, 11-12; Reply, Dkt. 114, at 10. Thus seizing upon the Court's summary judgment Opinion (which relied expressly on the promotion of catering services in the fax at issue in Rosen's individual claim to sustain that claim against Division), Rosen now contends in support of his class certification request that the RFG template used to send faxes to the putative class members "promoted Defendant's catering services," as well. Mem., Dkt. 100, at 10, 11-12; Reply, Dkt. 114, at 10. Hence, argues Rosen, "Plaintiff's claim arises from the same 'practice or course of conduct' that gives rise to the claims of the other class members – *i.e.*, Defendant's use of fax blaster [sic] to send junk fax advertisements that promote its catering services and fail to provide the opt-out notice required by law." Mem., Dkt. 100, at 10; *id.* at 11-12 ("Plaintiff and the class members all possess the same interest in advancing the claim that facsimiles promoted Defendant's catering services"); Reply, Dkt. 114, at 10 (same).

With these assertions, Rosen seeks to certify a class of plaintiffs whose fax numbers are listed on the RFG fax log—although that log does not include Rosen's fax number, Reply, Dkt. 114, at 10, and the template used by RFG to send faxes to the numbers on that log differs in critical respects from the fax on which Rosen's individual TCPA claim is based. For example, unlike the fax as issue in Rosen's claim, and contrary to his assertions in support of class certification, the RFG template that Rosen offers to support his class-wide allegations makes no mention of catering services—Division's or otherwise. *See* Mem. Ex. 1 at Ex. 8, Dkt. 100-1, at 20. Nor does Rosen assert that any of the products or services that are promoted or described in that template were, or would have been, provided by Division. Given these differences between the fax involved in Rosen's individual claim and the template involved in his putative class's claim—differences that go to the heart of the "wrong entity" issue raised by Division in this case—the Court concludes that Rosen's request for class certification must be denied.

**ANALYSIS**

"In short, all classes must satisfy the Rule 23(a) criteria of numerosity, common questions of law or fact, typicality of claims or defenses, and adequacy of representation." *Spano v. The Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011). In addition, the class must further meet the requirements of at least one provision of Rule 23(b); here, 23(b)(3)'s requirements that "common questions predominate and class treatment is superior." *Id. See also* Mem., Dkt. 100, at 8, 12-13 (arguing predominance and superiority). Finally, the class must satisfy two implicit prerequisites of Rule 23, namely, that the class be sufficiently "definite" or "ascertainable," and that the representative plaintiff (here, Rosen) be a member of it. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) ("a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members") (quoting *East Tex. Motor Freight Sys.*

4

*Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) ("a class must be sufficiently definite that its members are ascertainable"); *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (plaintiff must show "that the class is indeed identifiable as a class" in addition to numerosity, commonality, typicality, and adequacy requirements of Rule 23).

Analysis of these requirements must be "rigorous," particularly where (as here) certification could expose a defendant "to a very large potential liability." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723-24 (7th Cir. 2011) (that the TCPA does not "cap damages" and may therefore expose a defendant to "a very large potential liability" is "relevant" to "the need for a rigorous analysis of whether to certify a class."). "Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Spano*, 633 F.3d at 583. "If some of the determinations required by Rule 23 cannot be made without a look at the facts, then the judge must undertake that investigation," even if those inquiries "overlap with the merits." *Wal-Mart*, 131 S. Ct. at 2551-52 ("Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982)). Ultimately, to certify a class, the Court must conclude that each Rule 23 requirement is met by a preponderance of the evidence. *Teamsters Local 445 Freight Division Pension, Fund v. Bombadier Inc.*, 546 F.3d 196, 202 (7th Cir. 2008). While each requirement must be analyzed independently, however, they often (as here) overlap, and the analyses they require can therefore "merge." *See, e.g., CE Design*, 637 F.3d at 724 ("In many cases," the typicality requirement "merges with the further requirement that the class representative 'will fairly and adequately protect the interests of the class.'").

With these standards in mind, the Court concludes that Rosen and his putative class fail to meet the requirements for class certification imposed by Rule 23. Here is why.

**I        Typicality and Adequacy**

Most problematic for Rosen's certification request is Rule 23(a)'s requirement that the claims of the class representative (here, Rosen) "are typical of the claims" of the putative class, and that the representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3) and (4). Typicality requires "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586. There is little such congruence here, where Rosen's claim is based on a fax that points to the defendant in this case, Division, only (if at all) by promoting Division's catering services, *see* Mem. Ex. 5 at Ex. A, Dkt. 100-5, whereas the template on which the claims of the putative class would be based bears no mention of products or services provided by Division. *See* Mem. Ex. 1 at Ex. 8, Dkt. 100-1, at 20. In turn, the atypicality of a representative's claim impairs his ability to represent the class. *See Spano*, 633 F.3d at 586 ("The same concerns arise again when we consider adequacy of representation."). As the Seventh Circuit has explained, "[a] class is disserved if its representative's claim is not typical of the claims of the class members, for . . . a class representative's atypical claim may prevail on grounds unavailable to the other class members, leaving them in the lurch." *C.E. Knight*, 637 F.3d at 724. So too here.

Rosen attempts to address these deficiencies both factually and legally. As to the facts, Rosen repeatedly asserts that the template at issue in the putative class claims "promoted the Defendant's catering services." Mem., Dkt. 100, at 10, 11-12; Reply, Dkt. 114, at 10. But this is plainly unsupported. Unlike Rosen's fax, which stated "We also do office catering" and listed a

website for catering (www.chitowncateringonline.com) the template says nothing of catering or a website for catering—so it is particularly difficult to credit Rosen's argument that one of the purposes of the fax was to promote any catering service, much less Division's. *Compare* Dkt. 100-5, at 5 (Rosen fax), *with* Dkt. 100-1, at 20 (template).

Undeterred by the lack of any reference to catering services on the fax template itself, Rosen maintains that the template nevertheless "directed the recipient to a website that promoted the Defendant's catering services." *See, e.g.,* Mem., Dkt. 100, at 6-7; Reply, Dkt. 114, at 8, 10-11. But Rosen never explains how that website (i8at.com/ChiTownPizza) "promotes Defendant's catering services," and for good reason: it doesn't. The only evidence that Rosen provides of the contents of the website is a screen shot that reads: "Please come back soon. We're working on our site!" Mem. Ex. Dkt. 100-1, at 21. And while this otherwise blank webpage does list various links, including one for a "Catering Menu," Rosen provides no evidence of where that link led or what it did, if anything—nor could he. Mr. Gilligan, the RFG witness who created and maintained the website listed on the template, explained (in a page of deposition testimony omitted from Rosen's submission) that the site was a "cookie cutter type header" not created specifically for the client; not all of the links were necessarily "live"; he had no idea if the "full menu" or "catering menu" links ever were operational because "in some instances" they never uploaded a menu to those links; a catering menu "would appear" if the link were operational; and, conversely, if it were "a dead link," it "would just say 'come back soon' or something along those lines." Resp. Ex. C, Dkt. 113-4, at 28. "In other words, the link for full menu and catering menu did not go away if there was no menu there." *Id.*[1]

---

[1] The absence of a catering menu from the website RFG created would not be surprising, moreover, given Peles's testimony that he lacked capacity to cater anything other than "a very small order." Resp. Ex. B, Dkt. 113-3, at 32.

The website listed on the template thus leads nowhere helpful to Rosen. But even if it did, and even if that website led to a catering menu for items that Division would provide (as Rosen asserts, but the record does not show), that would still fall short. As this Court explained in its summary judgment Opinion, Division "cannot face TCPA liability here solely because" of a shared website listed on the fax, because "that is not enough to conclude that the ***advertisement itself*** promoted" Division, Mem. Op. Dkt. 66, at 4-5, or that the fax was sent "on behalf of" Division. *See id.* at 6-7 (citing multiple factors supporting an inference that the fax was "sent on behalf of" Division). The same is true for the template.

The basis for Rosen's individual claim—that the fax over which he sues promotes Division's catering services—is thus unavailable to the putative class, and indeed works against it. But the divergence between Rosen's claim and the putative class claims does not stop there. Evidence of who paid for the class template and when—details that are unknown for Rosen's fax, to his benefit on summary judgment, *see* Mem. Op., Dkt. 66, at 7—also works against the class. The record now shows that Peles made three payments to RFG, all by December 1, 2009, and all before Express was involuntarily dissolved on December 11, 2009. Mem., Dkt. 100, at 6 and n.5; Mem. Ex. 2, Dkt. 100-2, at 2-3; Pl.'s Add. Facts on SJ, Dkt. 54, ¶ 7. This timing supports Division's argument that these payments were made solely on behalf of Express—whose address and contact information are the only ones listed on the template that RFG made in exchange for these payments—and not Division. *See* Mem. Ex. 1, Dkt. 100-1, at 20 (template); Resp., Dkt. 113, at 1-3. Again, Rosen's individual claim is not subject to this evidence or the arguments that follow from it.

Rosen nevertheless insists that his claim must be typical of the class claims because Rosen's fax must have come from RFG, since "that is the only fax broadcaster" Peles hired.

Reply, Dkt. 114, at 1, 5, 7-8. But the argument proves too much. RFG's Mr. Gilligan testified that RFG did not send any fax to Rosen, Resp. Ex. C, Dkt. 113-4, at 11, a fact buttressed by RFG's fax log, which Rosen acknowledges does not include his fax number. *See* Reply, Dkt. 114, at 10 (referring to "the fact that Plaintiff's fax number does not appear on the fax log produced by RFG"). And Mr. Gilligan further confirmed that RFG did not create Rosen's fax, as evidenced by the different website, opt-out number and language, and credit card information listed on Rosen's fax, among other differences. Resp. Ex. C, Dkt. 113-4, at 45-46. This testimony, coupled with the lack of any legend on Rosen's fax indicating when it was sent or where it came from, *see* Mem. Ex. 5, Dkt. 100-5, at 5, and Rosen's repeated insistence that Peles hired "one and only one fax broadcaster," Reply, Dkt. 114, at 1, 5, 7-8, leave the source of Rosen's fax unaccounted for.[2] But whatever its origin, given Gilligan's testimony, the Court cannot conclude that Rosen's fax came from RFG, or that his claim is typical of the claims of the putative class members whose faxes did come from RFG.[3]

---

[2] Rather than cite or address these passages of Gilligan's testimony, Rosen relies repeatedly on Peles's purported identification of Rosen's fax "as one created by the fax broadcaster" Peles hired. Reply, Dkt. 114, at 5, 8; Mem., Dkt. 100, at 7. But in deposition testimony again not provided by Rosen for this motion, Peles said he did not know what the document was and did "not know what exactly Rosen Chiropractic did or did not receive." Pl.'s Add. Facts on SJ Ex. 1, Dkt. 54-1, at 8. After attempts to refresh his recollection by Rosen's counsel, Peles then stated it was created by "a company that does these sorts of things," but he did not recall the name of the company or when it happened. Mem. Ex. 3, 100-3, at 3. And when pressed for further information, Peles said "I honestly do not know. I don't recall." *Id.* Such feeble evidence fails to refute firm testimony from RFG that it did not create or send Rosen's fax, fortifying that answer with details about the document that did not come from RFG, and an RFG fax log that lacks Rosen's fax number. *See* Resp. Ex. C, Dkt. 113-4, at 11, 45-46; Reply, Dkt. 114, at 10.

[3] Again seeking respite from Gilligan's testimony, Rosen repeatedly asserts that "this Court explicitly found that 'Rosen received a fax advertisement' when it denied Defendant's motion for summary judgment." Reply, Dkt. 114, at 4, 7. Not so. The Court makes no findings of fact in evaluating a summary judgment motion; rather, its task is to assess whether the evidence adduced by the parties creates any material fact disputes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("at the summary judgment stage the judge's function is not himself to

Rosen's attempt to solve this problem with case law fares no better. Tracking the Seventh Circuit's typicality standard in *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983), Rosen argues that "Plaintiff's claim arises from the same 'practice or course of conduct' that gives rise to the claims of the other class members — *i.e.* Defendant's use of fax blaster to send junk fax advertisements that promote its catering services and fail to provide the opt-out notice required by law." Mem., Dkt. 100, at 10; Reply, Dkt. 114, at 6-7. But, again, the factual inaccuracy of the predicate (as shown above, the template promotes no one's catering services, let alone Division's), puts the lie to Rosen's "same practice or course of conduct" mantra. Moreover, as even Rosen recognizes, the typicality standard set out in *De La Fuente* demands more than just the "same practice or course of conduct"—it further requires the claims of the representative and class to be "based on the same legal theory." *See* Mem., Dkt. 100, at 10 ("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members ***and*** his or her claims are based on the same legal theory." (quoting *De La Fuente*)) (emphasis added); *see also Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (same, quoting *De La Fuente*). As shown above, Rosen and the

---

weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"). Consistent with the standard for summary judgment, the Court's summary judgment Opinion "construe[d] all facts and reasonable inferences in the light most favorable to Rosen," the non-movant, Mem. Op., Dkt. 66, at n.1. The Court thus accepted Rosen's allegation that "[a]t some time between September 2007 and September 2011, Rosen received a fax advertisement for Chi-Town Express," *id.* (citing Pl.'s Add. Facts on SJ, Dkt. 54-1, ¶ 14), although the Court also noted that the fax "failed to include the fax header information, including the date." *Id.* at n.2. This says quite little of use to Rosen about the source of his fax, although in keeping with its summary judgment Opinion, the Court will not go so far as to find here that the fax was not sent to Rosen on behalf of Division or to promote its goods or services. While a court's factual inquiries for purposes of class certification often cannot help "touching aspects of the merits," *Wal-Mart*, 131 S. Ct. at 2551-52, there is no need to go so far. But that restraint does not help Rosen's class certification request; for there remains the insurmountable problem that, even if Rosen's fax was sent on behalf of Division or to promote its goods or services, Rosen's claim based upon that fax is fundamentally unlike the claims of the putative class members, making him fundamentally the wrong person to represent them.

class cannot share the same legal theory, because the class lacks a basis to say that the RFG template promotes Division's products or services in violation of the TCPA. This key difference, along with other divergent facts surrounding Rosen's fax on the one hand and the class template on the other, more than compel the conclusion that there is simply not "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d at 586.

Similarly unavailing is Rosen's reliance on this Court's statement in *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2014 WL 540250, *11 (N.D. Ill. Feb. 11, 2009), that "factual distinctions between the representative parties' claims and the class members' claims do not destroy typicality." Reply, Dkt. 114, at 7 (quoting *Chapman*). That of course does not mean that every factual distinction must be overlooked; and in this case, the difference between Rosen's fax and the class's template is no mere "factual distinction"—it is the difference between summary dismissal and a viable claim.[4] More instructive, therefore, is the Seventh Circuit's teaching in *C.E. Knight* that a class "is disserved" where "a class representative's

---

[4] Also inapposite are four other district court decisions that Rosen cites to argue that "differences among the facsimiles transmitted to the class members does not defeat class certification." Reply, Dkt. 114, at 2, 4; Mem., Dkt. 100, at 11. Only three of these decisions were on class certification, and while they may involve some differences between faxes received by members of the same class, they do not involve conflicting theories of liability based on those differences, as is the case here. *See St. Louis Heart Ctr., Inc. v. Vein Ctrs. For Excellence*, No. 4:12 CV 174 CDP, 2013 W.L. 6498245, *6 (E.D. Mo. Dec. 11, 2013) ("the content of each fax was virtually the same."); *Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*, No. 12 C 3671, 2012 WL 6106714, *4 (N.D. Ill. Dec. 6, 2012) (certifying class where there was "no indication that [plaintiff's] interests are antagonistic to those of other class members"); *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805 (N.D. Ill. 2008) (certifying class where fax transmissions were sent to class members "under same general circumstances"). The fourth decision, *Hinman v. M and M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1162-63 (N.D. Ill. 2009), was on summary judgment in *Hinman supra*, where the court granted summary judgment for the class on two similar ads and against the class on three faxes whose contents were unknown. Here, the contents of both Rosen's fax and the class template are not only known, they are also known to conflict with one another in ways that matter to liability.

atypical claim may prevail on grounds unavailable to the other class members, leaving them in the lurch." *C.E. Knight*, 637 F.3d at 724; *see also Muro*, 580 F.3d at 492 (no typicality where, as a result of "factual differences between [plaintiff's] claims and the claims of her fellow putative class members . . . certain provision of TILA that apply in [plaintiff's] case may not apply to most of her proposed fellow class members"). So too here. This Court held that Rosen gets to a jury because the fax he claims to have received promoted the Defendant's catering services (or so a jury could conclude). That cannot be said of the RFG template, so the putative class members relying on faxes based on that template would, indeed, be "left in the lurch" as Rosen's claim moves to trial.

For these reasons, the Court concludes that Rosen has failed to meet the typicality and adequacy of representation requirements of Fed. R. Civ. P. 23(a) (3) and (4).

## II     Numerosity and Ascertainability

Rosen's numerosity and ascertainability showings face similar difficulties. To meet Rule 23(a)(1)'s numerosity requirement, Rosen asserts that "there are at least 106 members of the class, as shown by RFG Marketing's Fax log," and that "[e]ach entry in the fax log reflects a successful transmission of a facsimile that was sent on behalf of Defendant, that promoted its goods and services." Mem., Dkt. 100, at 9. That would be enough, if each entry on RFG's log reflects a fax "sent on behalf of Defendant" (*i.e.*, Division) and "promoted its goods and services." But, as discussed above, Rosen can establish neither premise. Nor, then, can he establish numerosity. There are no members of the putative class; so far as the evidence establishes, none of the recipients of the faxes recorded in the fax log received an advertisement sent on behalf of Division or promoting its catering services. They received, instead, an advertisement based on a template that has no discernable connection to Division's business.

Even assuming that each recipient listed on RFG's fax log had a claim against Division, the log poses still a different problem for Rosen's class certification request—Rosen's fax number is not on it. *See* Reply, Dkt. 114, at 10 (referring to "the fact that Plaintiff's fax number does not appear on the fax log produced by RFG"). Putting aside Rule 23's implicit requirement that a representative plaintiff be a member of the class on behalf of which he is suing, *see Wal-Mart*, 131 S. Ct. at 2550, the absence of Rosen's fax number from the log he uses to identify class members means that the log, in fact, does not identify the members of the class. For if Rosen is to be considered a class member despite his number's absence from the log, the log tells us little about what other absent recipients are nevertheless class members, rendering the class indefinite. *See Quality Mgmt. and Consulting Servs., Inc. v. SAR Orland Food Inc.*, No. 11 C 0679, 2013 WL 5835915, *4 (N.D. Ill. Oct. 30, 2013) ("because the Faoro List is unreliable and because [plaintiff] has provided no other evidence that can be used to identify the class, class certification cannot be granted" (citing *Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D. Ill. 2008)).

For these reasons, the Court concludes that Rosen has failed to meet Rule 23's definiteness requirement and Rule 23(a)(1)'s numerosity requirement.

## III    Motion for Leave to Amend Complaint's Class Definitions

This leaves Rosen's request to amend his Complaint to recite the following class and sub-class definitions:

The Class:

All persons who were successfully sent a facsimile advertisement between September 26, 2007 and October 16, 2011 on behalf of Defendant or that promoted its goods or services, and that did not include a notice both setting forth the requirements for an opt-out request and stating that failure to comply with an opt-out request within 30 days is unlawful.

The Sub-Class:

All persons who were successfully sent an unsolicited facsimile advertisement between September 26, 2007 and October 16, 2011 on behalf of Defendant or that promoted its goods or services, and that did not include a notice both setting forth the requirements for an opt-out request and stating that failure to comply with an opt-out request within 30 days is unlawful.

These definitions differ slightly from those in Rosen's Complaint, which instead speak of persons who "were sent faxes by or on behalf of defendant promoting its goods or services." Compl., Dkt. 1, ¶ 21. Rosen's currently proposed definitions thus employ a disjunctive (requiring faxes sent "on behalf of Defendant *or* that promoted its goods or services") that the Complaint definitions lack.[5] But the disjunctive adds nothing because the putative class claims, and the proof supporting those claims, contradict both parts of each class definition.

Specifically, as explained above, the RFG fax log that Rosen uses to identify the class and sub-class (from which Rosen's fax number is absent), and the RFG fax template that Rosen uses to support their claims (which differs in critical respects from Rosen's fax), fail to demonstrate that Rosen's putative class and subclass received faxes "on behalf of Defendant or that promoted its goods or services." *See infra* part I. Rosen has therefore failed to identify a class that falls within any of his proposed definitions. *See infra* part II. Moreover, because Rosen's own claim and proof conflict with those of the putative class in this critical respect, Rosen's request to represent the class fails to meet the Rule 23 requirements discussed above. *See infra* part I. And because these failures persist equally among Rosen's newly proposed class definitions and those recited in his Complaint, there is no reason to address Rosen's request to amend his class and sub-class definitions. *See Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 103-04 (N.D. Ill. 2013) (rejecting new class definition proposed in class certification reply

---

[5] The Complaint definitions further require that the faxes were sent "without prior express invitation or permission" (class a) or lacked "an 'opt out' notice" (class b). *Id.*

memorandum: the court "does not need to decide whether the amendment is appropriate because [plaintiff] fails to meet the standards of Rule 23 under either definition"); *G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C 5528, 2011 WL 248511, *4 (N.D. Ill. Jan. 25, 2011) (rejecting new class definition asserted in class certification motion: "The Court need not now decide which class definition applies because Plaintiff fails to meet the standards of Rule 23 under either definition.").

For these reasons, Rosen's motion for leave to amend his complaint to reflect his newly proposed class and sub-class definitions is denied as moot.

\*   \*   \*

For all of these reasons, the Court denies Rosen's Amended Motion for Class Certification and Motion for Leave to File an Amended Complaint, Dkt. 99.

Date: February 13, 2015

John J. Tharp, Jr.
United States District Judge